O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OLIVIA FRANCES MAGANA,** | ) NO. CV 12-05275-MAN |
|       **Plaintiff,** | ) |
|       v. | ) MEMORANDUM OPINION |
| **CAROLYN W. COLVIN,**[1] | ) AND ORDER |
| **Acting Commissioner of Social Security,** | ) |
|       **Defendant.** | ) |

Plaintiff filed a Complaint on June 22, 2012, seeking review of the denial of plaintiff's application for a period of disability and disability insurance benefits ("DIB"). On July 24, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on April 15, 2013, in which: plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action. (*See* Fed. R. Civ. P. 25(d).)

payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On June 4, 2009, plaintiff filed an application for a period of disability and DIB. (Administrative Record ("A.R.") 14.) Plaintiff claims to have been disabled since June 9, 2008, due to fibromyalgia, diabetes, high blood pressure and cholesterol, heart and vision problems, shortness of breath, and "forgetting things." (A.R. 36, 57, 64, 166.) Plaintiff has past relevant work experience as a secretary. (A.R. 20.)

After the Commissioner denied plaintiff's claim initially and upon reconsideration (A.R. 14, 57-61, 64-68), plaintiff requested a hearing (A.R. 69). On April 13, 2011, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Sally C. Reason (the "ALJ"). (A.R. 14, 31-50.) Vocational expert Lynn Tracy also testified. (*Id*.) On April 21, 2011, the ALJ denied plaintiff's claim (A.R. 14-20), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 1-3). That decision is now at issue in this action.

**SUMMARY OF ADMINISTRATIVE DECISION**

The ALJ found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013, and has not

engaged in substantial gainful activity since June 9, 2008, the alleged onset date of her disability. (A.R. 16.) The ALJ determined that plaintiff has the severe impairments of: "ischemic heart disease status post stenting in May 2007; diabetes mellitus; mild lumbar degenerative disc disease; and obesity."[2] (*Id.*) After considering plaintiff's impairments, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (A.R. 17.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (A.R. 17.) Further, the ALJ found that plaintiff is capable of performing her past relevant work as a secretary, because that work "does not require the performance of work-related activities precluded by [plaintiff]'s [RFC]." (A.R. 20.) Accordingly, the ALJ concluded that "[plaintiff] has not been under a disability, as defined in the Social Security Act, from June 9, 2008, through the date of [her] decision." (*Id.*)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

---

[2] The ALJ did not find plaintiff's visual impairment to be severe. (A.R. 16.) Further, the ALJ found no medical evidence to corroborate plaintiff's claim that she was limited by fibromyalgia. (*Id.*) Specifically, the ALJ noted that there is "no indication [plaintiff] has been either evaluated for, or diagnosed with, fibromyalgia," and "[plaintiff] has not alleged or otherwise reported having fibromyalgia since mentioning it in connection with her application." (A.R. 16-17.)

3

decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which

exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff claims the ALJ erred by not considering plaintiff's subjective symptom testimony properly. (Joint Stipulation ("Joint Stip.") at 4-12, 19-20.)

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also 20 C.F.R. § 404.1529(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning

the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also* 20 C.F.R. § 404.1529(c).

An ALJ may not rely on a claimant's daily activities to support an adverse credibility determination when those activities do not: (1) contradict claimant's other testimony; or (2) meet the threshold for transferable work skills. *See* Orn, 495 F.3d at 639. As the Ninth Circuit has explained, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting.'" *Id.* (citation omitted). A claimant need not be "utterly incapacitated to be eligible for benefits . . . and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).

As noted *supra*, the ALJ found that plaintiff has the severe impairments of: "ischemic heart diseases status post stenting in May 2007; diabetes mellitus; mild lumbar degenerative disc disease; and obesity." (A.R. 16.) The ALJ also found that "[plaintiff]'s medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 17.) Further, the ALJ cited no evidence of malingering by plaintiff. Accordingly, the ALJ's reason for discrediting plaintiff's subjective complaints must be clear and convincing.

In her decision, the ALJ found that "[plaintiff]'s statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with [the ALJ's RFC assessment for plaintiff]." (A.R. 17.) Specifically, the ALJ found plaintiff to be not credible, because: (1) the medical evidence does not support plaintiff's allegations of totally disabling limitations; (2) plaintiff made various inconsistent statements; (3) plaintiff's treatment has been routine and/or conservative in nature; and (4) plaintiff's daily activities "are not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitations." (A.R. 17-19.)

The ALJ noted that "the medical evidence of record does not show laboratory or clinical findings which would support finding that [plaintiff] has been unable to work since June 2008." (A.R. 17-18.) The ALJ cited medical evidence that "[a]fter cardiac stenting in May 2007, [plaintiff] . . . had 0% residual stenosis," and "a post-operative stress ECHO performed in October 2007 was described as 'normal' (showing no new wall motion abnormality with exercise, and a left ventricular ejection fraction of 60%)." (A.R. 18.) In addition, the ALJ noted that, "although [plaintiff] reported a number of subjective complaints, including back pain with radiation to the left leg, and pain and numbness in the left leg," to consultative internist John Sedgh, M.D., "[plaintiff] exhibited few objective signs of impairment on clinical examination" during a September 2009 examination. (*Id.*) In fact, Dr. Sedgh opined that plaintiff was capable of performing medium work. (*Id.*) Further, as the ALJ properly emphasized, "the record does not contain any other opinion from a treating or examining physician

indicating that [plaintiff] is disabled or even has limitations greater than those determined [by the ALJ]." (A.R. 20); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(noting that an ALJ may consider a physician's opinion that plaintiff could work, which contradicts plaintiff's assertion to the contrary, in determining credibility). Thus, although a lack of medical evidence cannot form the sole basis for discounting plaintiff's pain testimony, it is a factor that the ALJ can, and properly did, consider in her credibility analysis. Burch, 400 F.3d at 681.

The ALJ also discredited plaintiff, because she made various inconsistent statements. For example, the ALJ found plaintiff to be not credible, because "[plaintiff] testified that she stopped working in June 2008 because she underwent stenting, [but] the medical records . . . show the stenting occurred in May 2007." (A.R. 18.) Contrary to the ALJ's characterization, plaintiff's actual testimony was that she stopped working, because "[she] had a stent, and [she] was having difficulties. [She] was having shortness of breath and [she] couldn't function, [she] couldn't see right." (A.R. 36.) Indeed, plaintiff acknowledged at the administrative hearing that the stenting occurred one year prior to her disability onset date. (*Id.*) Rather than attributing her disability onset to her stenting procedure, plaintiff appears to attribute it to complications arising from the stenting and her other impairments.

Critically, however, "[c]ontrary to her testimony, the record indicates [plaintiff] actually stopped working in June 2008 not because of the allegedly disabling impairments, but rather due to a business-

related layoff." (A.R. 18.) As the ALJ properly noted, while plaintiff testified that she stopped working as a result of her impairments, she also testified, and admitted elsewhere in the record, that she stopped working in June 2008, because she was laid off. (A.R. 42, 166.) When a claimant's work history undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *See* Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001)(holding that the ALJ properly considered the fact that claimant stopped working because "he was laid off, rather than because he was injured"). Thus, this contradiction constitutes a clear and convincing reason for discrediting plaintiff.

The ALJ also discredited plaintiff, because plaintiff "indicated that after being laid off, she collected unemployment benefits and looked for work for about a year." (A.R. 18.) The ALJ noted that plaintiff "indicated that she was primarily looking for work in medical offices, and that she was specifically trying to find a job similar to the one she had been performing." (*Id.*) The ALJ asserted that "[t]his raises additional questions as to whether [plaintiff]'s continuing unemployment is actually due to her medical impairments, as opposed to non-medical factors." (A.R. 18-19.) As the ALJ properly noted, plaintiff testified at the administrative hearing that she was receiving unemployment benefits while looking for secretarial jobs and "maybe" could have performed a secretarial job similar to the one she had previously if she did not have to get up or lift much in the way of weight. (A.R. 43.)[3] Accordingly, because plaintiff held herself out as

---

[3] Plaintiff testified, however, that as of the fall of 2009, she did not believe that she could perform such a job, because her condition had worsened. (A.R. 43.)

1  able to work for at least a year afer she was laid off in June 2008,
2  plaintiff's assertion that she became disabled in June 2008, is not
3  credible.  See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155,
4  1161-62 (9th Cir. 2009)(noting that receipt of unemployment benefits can
5  be a basis to discredit a claimant when he holds himself out as able to
6  work).  Accordingly, the ALJ properly discredited plaintiff's testimony
7  regarding the date on which she became disabled, based on her receipt of
8  unemployment benefits.

     The ALJ also found plaintiff to be not credible, because
plaintiff's description of her limitations throughout the record have
been "inconsistent and unpersuasive." (A.R. 19.)  For, example, the ALJ
noted that "while alleging an inability to sit for more than 15 minutes
at a time, [plaintiff] simultaneously acknowledged that she is able to
drive, which obviously involves sitting, for 45 minutes at a time."
(Id.)  Plaintiff contends that her two statements are not contradictory,
because the statements were made two years apart, and her condition had
"deteriorated" in the interim.  (Joint Stip. at 10.)  However, prior to
the hearing date, plaintiff, in a form completed in June or July 2009,[4]
which was cited by the ALJ, stated that she could not sit for more than
15 minutes at a time.  (A.R. 169.)  Thus, her July 23, 2009 statement
that she could drive for 45 minutes clearly contradicts her June or July
2009 statement that she could sit for only 15 minutes at a time.  (A.R.
175.)  Thus, this contradiction provided another clear and convincing
reason for discounting plaintiff's credibility.

---

[4]    Although the form is undated, plaintiff noted that the date of her last outpatient visit was June 2009, and her next appointment was scheduled for July 2009.

The ALJ also reasonably found plaintiff's testimony that she "cannot lift anything" to be inconsistent with her "acknowledg[ment] that she carries a purse, and . . . is able to lift/carry a grocery bag(s) as well as various household items." (A.R. 19.) At the administrative hearing, plaintiff testified that she cannot lift anything, because she has "numbness and tingling in [her] hands." (A.R. 45.) However, when asked if she could carry a purse, plaintiff replied, "Oh, yeah, I put it over my neck, yes." (*Id.*) When asked "how much weight [she] could handle," plaintiff replied, "[l]ike five pounds." (*Id.*) Accordingly, plaintiff's testimony that she can lift/carry various household items and grocery bags is somewhat inconsistent with her testimony that she "cannot lift anything."

Next, the ALJ discredited plaintiff's pain allegations, because plaintiff's treatment for her allegedly disabling impairments "has been essentially routine and/or conservative in nature." (A.R. 19.) Specifically, the ALJ noted that plaintiff "has made only relatively infrequent trips to the doctor" notwithstanding her allegedly disabling symptoms. (*Id.*) An ALJ may consider evidence of conservative and/or infrequent treatment as a basis for discounting a claimant's credibility. *See, e.g.*, Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)(noting that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of impairment); Moncada, 60 F.3d at 524 (allegations of disabling pain can be discredited by evidence of infrequent medical treatment). Plaintiff asserts that "[she] took the measures expected for an individual in her condition" and "still endured symptoms of neuropathy until at least February 2011"; "[she] should not be expected to undergo surgery or any

11

other invasive procedure when the procedures will not help her condition." (Joint Stip. at 10.) While plaintiff need not undergo unnecessary procedures, the medical records support the ALJ's reasoning. For example, although plaintiff complained that her neuropathy worsened in March 2010 (Joint Stip. at 6), plaintiff made very few visits to her doctor for the treatment of her neuropathy. Indeed, the majority of plaintiff's medical records after March 2010, reflect treatment for other conditions and/or note that plaintiff's pain was "0/10."[5] Plaintiff's infrequent/conservative treatment, thus, weighs against her claims of disabling symptoms.

Lastly, the ALJ discredited plaintiff, because her "daily activities . . . are not limited to the extent one would expect, given [her] complaints of disabling symptoms and limitations." (A.R. 19.) In his decision, the ALJ noted that:

---

[5] *See, e.g.*, A.R. 401 – 3/26/10 ("[plaintiff] here for [follow-up] lab results"; plaintiff complains of "mild intermittent chest pain x 2 months, asymptomatic at this time" and mild shortness of breath; "No pain 0/10"); A.R. 404 – 4/9/10 (plaintiff here for follow-up; "[plaintiff] states feeling well, no chest pain or [shortness of breath], no polydipsia or polyuria, no peripheral edema"; "No pain 0/10"); A.R. 407 – 5/10/10 (plaintiff's chief complaint is "gastrointestinal bloating/flatus . . . with heartburn, loose stool, [and] abd[ominal] discomfort"); A.R. 411 – 6/24/13 (plaintiff complains of "[shortness of breath on exertion x 1 1/2 mos. when standing up, pain on her neck & squeezing pain on l[ef]t side of chest radiating to the back, l[ef]t arm & numbness on and off"); A.R. 414 – 7/8/13 (plaintiff complains of "burning stomach for 1 y[ear]"; "pepcid does not help much"; "no vomiting"; "denie[s] [chest pain]/[shortness of breath]/palpitation/dizzy"; "non[-]compliant to diet and exercise"); A.R. 418 – 7/27/10 ("[plaintiff] seen . . . for treatment of H Pylori"); A.R. 421-22 – 11/04/10 (plaintiff complains of "dizziness, nausea, [and] vomiting off and on for 3 days"; "No pain 0/10"); A.R. 426 – 12/06/10 ("[plainiff's] stomach is much better now, occasionally gassy, no nausea/vomiting/blood in stool"; "left shoulder pain for 6 months off and on"; "left hip pain for 3 weeks"; "can walk, no weakness, no numbness").

> In July 2009, [plaintiff] reported she regularly drives, goes shopping, and does house work, including mopping, vacuuming cooking, cleaning, doing the dishes, and washing clothes . . . . At the hearing, [plaintiff] described daily activities which are considerably more limited . . . ; however, two factors weigh against considering the testimony in this regard to be strong evidence in favor of finding [plaintiff] to be disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if [plaintiff]'s daily activities are currently as limited, it is difficult to attribute that degree of limitation to [plaintiff]'s medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall [plaintiff]'s allegedly limited daily activities are considered to be outweighed by other factors discussed in this decision.

(*Id.*; internal citations omitted.)

As an initial matter, the ALJ's description of plaintiff's daily activities is incomplete and misleading. Significantly, the ALJ failed to include plaintiff's statement that after performing 30-45 minutes of daily activities, she must take a break for "1 hr - 1 1/2 hrs and then start again." (A.R. 174.) Further, while acknowledging that plaintiff described more limited daily activities at the administrative hearing, the factors upon which the ALJ relied in discounting plaintiff's testimony are not entirely persuasive. The ALJ's first factor does not

constitute a clear and convincing reason to discount plaintiff's credibility, because it is germane to most claimants. Put differently, absent, for example, testimony from a percipient witness, it would be difficult for most claimants to "objectively verify" their daily activities. Moreover, "the entire purpose of a credibility analysis is to assess a claimant's testimony as to matters that are not otherwise easily verifiable." Gounder v. Astrue, 2013 U.S. Dist. LEXIS 12710, at *7 (C.D. Cal. Jan. 29, 2013). With respect to the ALJ's second factor, it appears that the ALJ is merely reasserting his initial reason for discrediting plaintiff -- *to wit*, that the medical evidence does not support plaintiff's claims of disability -- but, as noted *supra*, this is not, by itself, a clear and convincing reason for discounting plaintiff's credibility.

The Court finds, however, that the ALJ's error in relying on the above-noted invalid reason(s) was harmless, because the ALJ's other reasons are supported by substantial evidence. See Carmickle, 533 F.3d at 1162-63 (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless where remaining reasons were adequately supported by substantial evidence). The Court therefore finds and concludes that reversal is not warranted based on the ALJ's alleged failure to consider plaintiff's subjective symptom testimony properly.

///
///
///
///
///

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Neither reversal of the Commissioner's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration. IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for the Commissioner.

DATED: September 3, 2013

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE